

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DANNY METOYER | CIVIL ACTION NO. 1:10-cv-131 |
| -vs- | JUDGE DRELL |
| AMERICAN EAGLE AIRLINES, INC. | MAGISTRATE JUDGE KIRK |

### RULING

Before us is a motion for summary judgment (Doc. 25) by Defendant American Eagle Airlines, Inc. ("Eagle" or "Defendant"). Plaintiff Danny Metoyer is a former Eagle station agent at Alexandria International Airport (AEX). He brings a Title VII reverse gender discrimination claim against Eagle, which fired him after two months of work as a probationary employee for repeatedly engaging in inappropriate conduct. He also brings defamation and negligent infliction of emotional distress claims against Eagle arising out of his subsequent arrest and conviction for criminal trespass at AEX following his termination. For the reasons given below, we GRANT Defendant's motion and ORDER all of Plaintiff's claims DISMISSED, with prejudice.

### BACKGROUND

### I. FACTUAL BACKGROUND

Defendant hired Plaintiff as a station agent at AEX near the end of March, 2009.[1] Station agents generally perform all of the front-line tasks associated with operating a regional airline, e.g., ticketing, customer service, ramp service, security checks, gate checks, and baggage loading and

---

[1] Defendant claims Plaintiff's employment began "on or about March 25, 2009" while Plaintiff in his complaint claims it began "starting March 29, 2009." The difference is irrelevant here.

unloading. Eagle employs roughly 24 part-time station agents, each of whom work varying shifts each day, with approximately 6 agents present at any given time. The agent pool includes, and always has included, many males.

New employees at Eagle are hired subject to a 6 month probationary period. By Eagle's Rules of Conduct, all Eagle employees are required to act professionally and appropriately toward their co-workers and the public. Inappropriate or vulgar language is not acceptable and is grounds for disciplinary action, up to and including immediate termination. (Doc. 25-4, pp. 14-16).

Before joining Eagle, Plaintiff worked for United Airlines (UAL) for approximately 13 years. He left UAL in February of 2008, then worked for another airline for a short period before commencing his employment with Defendant.

When Plaintiff applied to work for Eagle, he did not mention any issue with his employment at UAL, and specifically replied "No" to the question of whether any "misconduct" was involved in his termination. (Doc. 25-4, p. 6). In his deposition in this case, however, Plaintiff admitted that he was fired from UAL after being arrested for assaulting another United employee at a union meeting. (Doc. 25-3, pp. 6-7, exhibit pp. 25-26). Defendant claims that if Plaintiff had revealed this information at the time of his application he never would never been hired, and if Defendant had learned of it prior to Plaintiff's termination for misconduct he would have been terminated for that history alone. (Doc. 25-2, p.4).

At the time of Plaintiff's hiring, Eagle's General Manager (GM) at AEX was Jesse Tobin ("Tobin"). Eagle's present GM at AEX, Nilsa Moret ("Moret"), took over for Tobin on or about Tuesday, May 19, 2009.

Shortly after beginning his employment, Plaintiff became unhappy with one of his fellow

station agents, Barkley Durbon. On one occasion, Plaintiff called Durbon a "pussy." Durbon reported the matter to then GM Tobin, who counseled Plaintiff that his conduct was inappropriate.

Plaintiff became involved in a similar exchange with another agent, Gloria Bray ("Bray"), a short time later. At approximately 5:30am on May 22, 2009, Bray and Metoyer were working together when Bray learned of a possible security breach with one of Eagle's planes. After speaking with the lead agent on duty, Andrea Young ("Young"), Bray asked Plaintiff to redo the security check. Plaintiff responded defiantly by, among other remarks, telling Bray to "get her ass out of here."[2] Bray reported the matter to Young, who in turn reported it to GM Moret. Bray also reported that Plaintiff made other offensive and profane statements during the exchange. Another station agent, Denetrice Mack ("Mack"), witnessed the exchange and confirmed Bray's report.

Moret spoke with Plaintiff soon thereafter. Plaintiff admitted he told Bray to "get her ass out of here." Moret perceived Plaintiff to be agitated during the conversation and angry about having to explain himself. A short time later, Moret met with various individuals, including Eagle's Human Resources department, and terminated Plaintiff.

Plaintiff was earning $9.00 an hour at the time of his termination.

The parties' description of the events surrounding Plaintiff's termination differ somewhat, but ultimately they do not conflict as to the essential facts.

Defendant claims that the incident with Bray was reported to GM Moret promptly, and that

---

[2] Defendant also alleges that Plaintiff used other profanity and was aggressive throughout the incident, which Plaintiff denies. Plaintiff's account of the incident in his deposition, after noting that he was processing a safety check on an Eagle flight with another employee, is, in part, as follows:
Gloria [Bray] came and started telling us something different. And I asked her to leave and to leave us alone. And I told her to get her ass out of here. And she told me, she'd have to take it personal. And Denetrice [Mack] tried to tell her to leave too. Gloria just kept coming at me. And, the next thing I know, I was in the office.
(Doc. 25-3, p. 21, exhibit p. 83).

she immediately commenced an investigation. This included emailing her superiors at Eagle detailing Plaintiff's behavior and her opinion that he "does not like to follow orders and is very disrespectful," concluding that "[t]his is now grounds for termination due to harassment of his fellow coworkers." (Doc. 25-4, p. 22). This also included taking a statement from Mack, the co-worker who was present, who confirmed Bray's version of the incident. (Doc. 25-4, p. 24). Moret then called Plaintiff to her office, discussed the incident with him and had him fill out a report offering his side of the story. As admitted by Plaintiff in his deposition, the report was substantively inaccurate, omitting, for instance, Plaintiff's use of profanity against his co-worker and generally blaming everything on that co-worker. (Doc. 25-4, p. 20). Regardless, due to this incident and Plaintiff's previous profane and abusive behavior, Defendant claims, GM Moret fired Plaintiff and asked him to turn in his badge and leave the premises. Defendant claims that Plaintiff was then later seen behind the Eagle ticket counter accessing his computer, and then in the restricted baggage loading area, which he accessed with the badge he had yet to return, leading to his arrest for trespass.

Plaintiff claims that nobody spoke to him about the incident until near the end of his shift, at about 9:30am, when he was told not to leave because GM Moret wished to speak with him. He claims that Moret asked him to submit a report of what happened, and after he did that and returned to her office, she fired him. He says that the officer who eventually arrested him was present at the second meeting and told him to gather his belongings and leave the premises. He claims that he had left his badge in his car with his work clothes, and after gathering his belongings from his locker he went to get those items from his vehicle and promptly turned them over. He says he was seen at his computer shortly thereafter because he had forgotten to clock out for the day, and, after initially saying in his deposition that he had been in the restricted baggage area because he had again

forgotten to clock out, he subsequently claimed that he was never in that area but was in the Northwest Airline's office to inquire about possible new employment. (Doc. 25-3, pp. 28-32). Inexplicably, in Plaintiff's account, "the Alexandria Police Department was contacted by the Defendant and the Plaintiff was arrested and charged with entry upon land and remaining after forbidden." (Doc. 3, p. 3).

It is undisputed that, in October 2009, Plaintiff pled guilty to the charge of criminal trespass for which he was arrested. (Doc. 25-3, p. 30).

## II. PROCEDURAL POSTURE

Following his termination, Plaintiff filed a timely complaint with the Equal Employment Opportunity Commission (EEOC) claiming he was terminated due to sex discrimination. He claimed, and continues to claim, that the sole basis for his inference of discrimination is that the employee with whom he had the final confrontation had told him previously that, "I guess I should tell you now I hate men." (Doc. 25-4, p. 20). No discriminatory animus on the part of Plaintiff's supervisor, or any other member of Eagle management involved in his termination, was alleged. (Doc. 25-3, p. 33).

The EEOC denied Plaintiff's complaint. He then filed the present action. He alleges Title VII employment discrimination, as GM Moret allegedly fired Plaintiff "[w]ithout investigating the allegations . . . [allegedly because] Plaintiff did not meet the guidelines of the Defendant's policy since it was during his probationary period. (Doc. 3, p. 3). He also claims in defamation arising out of his report and arrest, described in his complaint as follows:

> Alexandria Police Department was contacted by the Defendant and the Plaintiff was arrested and charged with entry upon land and remaining after forbidden. Because of this defamatory allegations and the incident that occurred with the police

> department, Plaintiff is unable to obtain employment due to the matter being on his record. Plaintiff asserts that the Defendant failed to properly conduct an investigation prior to his termination. Alternatively, Plaintiff asserts that the Defendant defamed him by stating to the Alexandria Police Department that he was illegally trespassing on property knowing that he was returning to the property to return his badge and to clock out properly. Plaintiff further alleges that the Defendant and its employees uttered defamatory words that caused him to be terminated without just cause which reflected negatively on his character as well as his work record.
> ....
> Plaintiff alleged that the comments made by Bray made with malice knowing that he did not use any profane comments towards Bray. These defamatory comments were made known to Young and later passed on to Moret, whom Plaintiff had not met until that day and who he did not have the pleasure to work for.

(Doc. 3, pp. 3-4, quoted as submitted, paragraph spaces omitted). Finally, Plaintiff also alleges, without explanation, a claim for "negligent infliction of emotional distress." (Doc. 3, p. 5).

After conducting discovery, including taking the depositions of Plaintiff and all of the other individuals involved, Defendant filed his motion for summary judgment on September 10, 2010, appending all relevant testimony and documents. (Doc. 25).

Plaintiff never responded or filed any opposition to this motion. Plaintiff likewise did not timely file his pretrial stipulations. After being contacted by Defendant about this deficiency, counsel for Plaintiff filed a brief "Notice Regarding Pretrial Stipulations." (Doc. 30, p. 1). In that document, filed on March 30, 2011, over six months after Defendant filed its motion, Plaintiff's counsel responded to that motion, in full: "As for the Motion that the defendant filed, the evidence will show at trial that the plaintiff has a legitimate issue of material fact that warrant this case heard before this honorable court." (Doc. 30, p. 2).[3]

---

[3] Needless to say, this is not how the rules of procedure work, in state or federal court. The purpose of a motion for summary judgment is to determine whether there is a need for a trial. It cannot be answered only by a promise to present evidence at trial. If Plaintiff's counsel thought her client's claim was so frivolous as to not warrant the time to craft a real response, we would have appreciated if she would have shown the same respect for our own limited resources by simply moving to have the case dismissed, rather than forcing us to decide the motion. As a note, and as discussed below, despite Plaintiff's lack of

## ANALYSIS

For the reasons given below, we find that all of Plaintiff's claims are baseless.

## I. SUMMARY JUDGMENT STANDARD

Under Rule 56, the Court will grant a party's motion for summary judgment only if:

> the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law . . . support[ing] the assertion by citing to particular parts of materials in the record.

Fed. R. Civ. P. 56. "'Material facts' are those facts 'that might affect the outcome of the suit under the governing law.'" *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 [1986]). The facts are reviewed with all "justifiable inferences" drawn in favor of the party opposing the motion. See *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy–that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996).

Once the movant shows there are no genuine issues of material fact, the burden is on the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. *Texas Manufactured Housing Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996), cert. denied, 521 U.S. 1112 (1997). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. See *Anderson*, 477 U.S. at 249-50. Mere conclusory allegations are not competent summary judgment

---

opposition, we still independently reviewed the record and applied the appropriate legal principles thereto, including making all disputed inferences and presumptions in Plaintiff's favor.

evidence, and such allegations are insufficient to defeat a motion for summary judgment. *Brock v. Chevron U.S.A., Inc.*, 976 F.2d 969, 970 (5th Cir. 1992).

## II. PLAINTIFF'S TITLE VII CLAIM

### A. Legal Standard

Plaintiff has no direct evidence of unlawful discrimination, and on summary judgment, claims of discrimination based only on circumstantial evidence are evaluated under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973); *Price v. Federal Express Corp.*, 283 F.3d 715, 719-20 (5th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff first must establish a prima facie case of discrimination.[4] See *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). A prima facie case of discrimination requires the plaintiff to show that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was replaced by someone who is not a member of his protected group or he was treated less favorably than others similarly situated to him. *Byers v. Dallas Morning News*, 209 F.3d 419, 426 (5th Cir. 2000).

Title VII prohibits discrimination in employment on the basis of gender, and a male can be a member of a protected group. As discussed by our sister court in the Northern District of Texas:

> There has been some discussion in the case law of whether reverse discrimination cases require a heightened standard for establishing a prima facie case. Some circuits have held that in addition to meeting the traditional McDonnell Douglas elements, a plaintiff must also establish "background circumstances that support an inference that the employer is 'one of those unusual employers who discriminate against the majority.'" *Ulrich v. Exxon Co.*, 824 F.Supp. 677, 683 (S.D.Tex.1993); see also

---

[4] Much of the discussion below is adapted from *Staten v. New Palace Casino*, 187 Fed.Appx. 350, 357-58 (5th Cir. 2006).

cases cited therein. The Fifth Circuit, however, and other courts, apply the *McDonnell Douglas* analysis without such an additional element. See *id.*; *Young v. City of Houston, Tex.*, 906 F.2d 177, 180 (5th Cir.1990).

*McGarity v. Mary Kay Cosmetics*, 1998 WL 50460, at *3, fn. 4 (N.D. Tex. 1998).

If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. See *Russell*, 235 F.3d at 222. The employer's burden is only one of production, not persuasion, and involves no credibility assessments. *Russell*, 235 F.3d at 222 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 [1981]).

If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. See *id.* To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 [5th Cir. 2001], cert. denied, 535 U.S. 1078 [2002]); see *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (discussing how an employee can establish pretext through "evidence demonstrating that the employer's explanation is false or unworthy of credence.").

Though Defendant's motion for summary judgment was unopposed, we have independently reviewed the record – making all inferences in Plaintiff's favor where he disputed any issue of fact in his complaint or deposition – and determined that Plaintiff's allegations are indeed without merit. See *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010).

## B. Application

We find that the evidence presented by Plaintiff does not come close to meeting his burden

under the *McDonnell-Douglas* standard.

*1. Plaintiff makes no prima facie case of discrimination*

As discussed, a prima facie case of discrimination requires the plaintiff to show that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was replaced by someone who is not a member of his protected group or he was treated less favorably than others similarly situated to him. *Byers*, 209 F.3d at 426. Plaintiff's case fails the second and fourth of these factors.

On the second factor, it is not clear that Plaintiff was qualified for the position at issue. He had the training and skills necessary for the job. However, he also previously had been fired for violent behavior while working for another employer in this industry. Given that he lied about this fact on his job application, we can never know if Defendant's claim that this history would have disqualified him for consideration for the position is true or not. However, it casts doubt on Plaintiff's ability to meet this factor.

On the fourth factor, Plaintiff points to absolutely no evidence showing that he was replaced by someone not of his protected group, or that he was treated less favorably than other employee(s) similarly situated to him. On our own review of the record, given that Eagle employs multiple males in this and similar positions, we doubt that Plaintiff could show that he was replaced by someone not of his class. Similarly, given the obviously unacceptable nature of Plaintiff's behavior, and that he was fired only two months into his six month probationary period, we doubt that he could show that he was treated less favorably than others similarly situated to him. Regardless, as Plaintiff points to no evidence probative on this point, we conclude that he cannot meet his burden(s) regarding it.

*2. Defendant had a more than satisfactory non-discriminatory reason for firing Plaintiff*

Though we do not find that Plaintiff makes a prima facie showing of discrimination, we analyze the remainder of the *McDonnell Douglas* test as if he had.

Here, Defendant meets its burden of production by claiming to have terminated Plaintiff's employment because of his abusive and profane behavior toward his co-workers, and the disrespect he showed his superiors. His profane, abusive, and disrespectful behavior – even the limited amount he admitted to in his deposition, much less the more extreme conduct Defendant alleges he actually engaged in – was clearly inappropriate, and sufficiently violative of Defendant's Rules of Conduct to warrant Plaintiff's termination. See, e.g., *Cervantez v. KMGP Servs. Co.*, 349 Fed.Appx. 4, 6-7 (5th Cir. 2009) (affirming summary judgment dismissal of employee's claims and finding that inappropriate conduct – in this case visiting pornographic websites – is a legitimate, non-discriminatory explanation for discharge); *Crouch v. England*, 2006 WL 1663760, at *6 (S.D. Tex. 2006) (use of profanity directed at co-workers held, with other factors, to be legitimate, non-discriminatory ground for discharge). This conclusion would likely hold for any employee, but it applies all the more considering that Plaintiff had only been on the job two months and was thus still in his probationary employment period.

*3. Plaintiff cannot show that Defendant's purported reason was false or pretextual*

Finally, once Defendant meets its burden of producing a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to show that this reason is pretextual, for instance, by showing it is false or unworthy of credence. *Reeves*, 530 U.S. at 143.

Though Plaintiff did not directly respond to the motion, he did comment on this issue in his deposition. In its own motion, Defendant helpfully summarized Plaintiff's comments as follows:

> GM Moret reached the wrong conclusion regarding the exchange with Ms. Bray because, according to Plaintiff, he did not consider the word "ass" to be "profanity";
>
> Moret had only been at AEX for a few days and had only just met Plaintiff;
>
> Bray allegedly had told Plaintiff that "she hated men" when they first met in late March or early April 2009; and
>
> Days before he was terminated, one of Eagle's lead agents said to Plaintiff, "we're going to be okay," or words to that effect.

(Doc. 25-3, Ex. 1, Pl.'s dep. pp. 104, 139-40, 147, 161, 163). We agree with this summary and discuss each of these points in turn.

First, whether Ms. Moret reached the wrong conclusion regarding Plaintiff's exchange with Bray is immaterial. *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a [discriminatory] motivation behind an adverse employment decision."). More importantly, Plaintiff admitted in his deposition both to telling Ms. Bray to "get her ass out of here," and to his earlier exchange with co-worker Barkley Durbon when he referred to him as a "pussy" and was reprimanded for his conduct. (Doc. 25-3, Ex. 1, Pl.'s dep. pp. 64-65). Defendant's investigation therefore was correct in at least enough of its information and conclusions to warrant Plaintiff's termination, even assuming that Plaintiff could prove that all of Defendant's other conclusions were false.

Second, the fact that GM Moret had only recently assumed the GM position at AEX is equally non-probative. Plaintiff had run-ins under his previous manager, and Moret was of course allowed to consider that previous manager's conclusions regarding Plaintiff's conduct in determining whether Plaintiff's behavior comported with Defendant's Rules of Conduct. Otherwise, Plaintiff

makes no claim that Moret's taking over as GM played any part in his termination, or somehow provides a basis for a finding of pretext.

Third, the alleged statement made by Bray – that she told Plaintiff that she hated men when they first met – has no bearing on the underlying facts that ultimately led to Plaintiff's termination; it would not excuse Plaintiff's actions even if it did; and in any case it was a remark by his co-worker and not attributable to the company or its management who decided to dismiss him. Moreover, prior to the incident with Bray Plaintiff was disciplined by male GM Tobin for referring to another male employee (Barkley Durbon) as a "pussy." Then, Plaintiff was terminated following the incident with Bray, which involved similar improper conduct, much of which is undisputed by Plaintiff himself. So, whether Ms. Bray did or did not make any sort of statement about her feelings towards men is irrelevant.

Finally, Plaintiff alleges that lead agent Young told Plaintiff, after his first incident and days before his termination, that, "we'll be okay." Plaintiff placed great value on this statement in his deposition, presumably because he took it as a promise from the company that he would not be fired for behavior such as that which he engaged in. If Plaintiff indeed interpreted this phrase in this way, he was sorely mistaken, as the statement represents no such promise, and even if it did it would not be binding on Defendant so as to prevent Plaintiff's subsequent firing. Accordingly, we find that this statement ultimately has no probative value on this issue.

## C. Conclusion

In all, Plaintiff does not make a prima facie case of discrimination, Defendant had a more than sufficient legitimate reason to fire him, and Plaintiff presents no evidence even hinting that this stated reason was pretextual, much less raising an actual disputed issue of material fact warranting

a trial. Accordingly, we find that Plaintiff cannot sustain his Title VII claim and this claim should be dismissed, with prejudice, as a matter of law.

### III. PLAINTIFF'S DEFAMATION CLAIM

Under Louisiana law, a claim for defamation requires a plaintiff to prove that: (1) defamatory word(s) were uttered; (2) there was an unprivileged publication; (3) the statement was false; (4) it was made maliciously (actual or implied); and (5) the alleged defamed party suffered injury. E.g., *Hebert v. La. Licensed Prof'l Voc. Rehab. Counselors*, 4 So.3d 1002, 1008 (La.App. 3 Cir. 2009). If one element of the defamation claim is lacking, the claim fails. *Id.* Plaintiff's claim is missing multiple of them. It is unclear precisely which statements Plaintiff claims were defamatory, so we consider each of the possibilities in turn below.

In several places he references those made by GM Moret and lead agent Young. Plaintiff's claim fails with regard to statements made by these individuals, however, as he admits that they never made a false statement concerning him. We quote from his deposition as follows:

> Did [GM Moret] ever say anything that you would say when she stated, made that statement, that was a false statement?
>
> A: No, sir.
>
> Q: Okay. What about Andrea Young, is there any statement that you would attribute to her that you would say when Andrea Young made that statement, that was a false statement?
>
> A: Not to my knowledge, sir.

(Doc. 25-3, Ex. 1, Pl.'s dep. 153-54). Given that no statements made by the Eagle GM or the lead agent were false, Plaintiff's defamation claim necessarily fails with regard to these individuals.

Likewise, Metoyer seems to claim that his being reported to law enforcement constitutes

defamation. However, again, there is no evidence that any statement made by any Eagle employee to law enforcement was false. Indeed, Metoyer admits that he was not authorized to access the restricted areas of the airport following his termination. (Doc. 25-3, Ex. 1, Pl.'s dep. 159-61). Plaintiff may have disagreed with his arrest, but he admits that the allegation made by Eagle to the police – that he was in an unauthorized part of the airport without proper credentials – is correct. We quote again from his deposition:

> Q: Okay. Wrongfully, but it was not false, it was an –
>
> A: Okay, I was wrongfully accused.
>
> Q: But do you agree that it was a truthful contention that you were in a part of the airport, when you were arrested, that you were not authorized to be in?
>
> A: At the moment, yes.

(Doc. 25-3, Ex. 1, Pl.'s dep. 160-161). Even without this admission, we note that, objectively, Metoyer was ultimately charged with and pled guilty to the crime for which he was reported and arrested, on the facts allegedly conveyed by Defendant's employees to the police. Given the array of privileges and protections surrounding citizens' good faith communication with law enforcement authorities, it is difficult for us to comprehend how such an at least mostly accurate report of a crime could possibly be considered "false," or otherwise constitute the basis of a suit for defamation.

Finally, to the extent that Plaintiff complains of Bray's internal report of the incident to Young (her supervisor), again, all indications are that the statements in her report are not false. In addition, though falsely accusing someone of a crime would normally be malice per se, here, even were these statements ultimately shown to be false they would nonetheless be privileged, as "a qualified privilege will extend to '[i]nternal communications by employees to superiors regarding

work related matters, particularly the job performance of any employee, ... when made in good faith to the proper parties.'" *Aronzon v. Southwest Airlines*, F.Supp.2d 2004 WL 57079 (E.D. La. 2004) (citing *Carter v. Catfish Cabin*, 316 So.2d 517, 523 [La. App. 2 Cir 1975]). "The communication must be 'made in good faith, on any subject matter in which the person communicating has an interest of in reference to which he has a duty, to a person having a corresponding interest or duty.'" *Id.* (citing *Henderson v. Guillory*, 546 So.2d 244, 248 [La.Ct.App.1989]). Here, Defendant adequately rebuts any presumption of malice or lack of good faith that could be found in its employees' statements and, given Plaintiff's admissions and lack of any evidence to the contrary, establishes that the communications are protected by this qualified privilege.

Based on the above analysis, we do not find that any statements by any Eagle employee – even were they shown to be false, which Plaintiff admits they are at least largely not – could in any way constitute actionable defamation under Louisiana law. Accordingly, we find that all Plaintiff's claims in this regard should be dismissed, with prejudice..

## IV. PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM

We agree with and adopt the following three reasons presented by Defendant in its brief explaining why this claim does not lie:

> Louisiana does not generally recognize an independent cause of action for negligent infliction of emotional distress. *DirectTV, Inc. v. Atwood*, 2003 WL 22765354, at *3 (E.D. La. 2003); *Lann v. Davis*, 793 So.2d 463, 466 (La. App. 2d Cir. 2001). Absent an "especially high likelihood" of "genuine and serious mental distress" arising from "special circumstances," all of which serves as a "guarantee that the claim is not spurious," the claim fails as a matter of law. *DirectTV*, 2003

> WL 22765354, at *3; *Lann*, 793 So.2d at 466.
>
> Here, the evidence, even when judged in the light most favorable to Plaintiff, involves an employer's decision to terminate a two-month employee who admittedly and repeatedly violated company policy. It also demonstrates that Plaintiff was arrested for trespass after he accessed a restricted area of AEX, which he admits was off-limits to him at the time he did so. (Doc. 25-3, Ex. 1, Pl.'s dep. 115-16). There are no special circumstances warranting recognition of an NIED claim in this instance.
>
> Second, negligence claims challenging employment decisions are preempted by Louisiana worker's compensation law, which provides the exclusive remedy for workplace injuries. LA. REV. STAT. § 23:1032A(1)(a); *Gilpin v. Elmer Candy Corp.*, 2000 WL 713195, at *3 (E.D. La. 2000) (citing *Tumbs v. Wemco, Inc.*, 714 So.2d 761 [La. App. 4 Cir. 1998]).
>
> Third, there is no evidence of severe emotional distress. Severe emotional distress includes neuroses, psychoses, chronic depression, phobia, and shock. E.g., *DirectTV*, 2003 WL 22765354, at *3. Here, Plaintiff testified to never seeking any medical attention and never attempting to visit a psychiatrist or psychologist. Plaintiff testified that the extent of the manifestation of his alleged emotional distress is that he "lost some weight." (Doc. 25-4, Ex. 1, Pl.'s dep. 170). Because Plaintiff has not and cannot present evidence reflecting serious emotional distress caused by Eagle, his claim fails as a matter of law.

(Doc. 25-1, pp. 11-12) (minor formatting and citation alterations made).

For all of the above reasons, we find that Plaintiff can point to no evidence giving rise to a claim for negligent infliction of emotional distress, and that this claim should thus likewise be dismissed as a matter of law, with prejudice.

## Conclusion

For all of these reasons, and in a separate judgment also issued this date, we order that Defendant's motion for summary judgment (Doc. 27) be GRANTED and Plaintiff's claims be DISMISSED, with prejudice.

SIGNED on this 18 day of April 2011 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE